## MINKER v. UNITED STATES.

### No. 6003.

Circuit Court of Appeals, Third Circuit.

May 29, 1936.

Rehearing Denied Sept. 23, 1936.

Henry B. Friedman, of Allentown, Pa., and Abram Salsburg, of Wilkes-Barre, Pa., for appellant.

Brien McMahon, Asst. Atty. Gen., Thomas W. Lanigan, Sp. Asst. to Atty. Gen., and Blair M. Ilderton, of Washington, D. C., for the United States.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment and sentence of the District Court for the Middle District of Pennsylvania. The appellant was indicted with 61 others upon a charge of conspiracy to commit offenses against the United States in violation of section 37 of the Criminal Code (18 U.S. C.A. § 88). Twelve revenue statutes relating to transporting, buying, selling, removing, concealing, possessing, distilling, and rectifying untax-paid distilled spirits are enumerated as setting out the offenses which the defendants conspired to commit. Of the 54 defendants arraigned, all but the appellant withdrew their pleas of not guilty and entered pleas of guilty or nolo contendere before the taking of any testimony. The appellant, however, adhered to his original plea of not guilty, was tried and convicted. This appeal is from the judgment and sentence entered upon the verdict of guilty.

The appellant argues that the evidence does not sustain the conviction and that the trial court erred, in the admission of evidence, in refusing to withdraw a juror following a prejudicial opening statement by the prosecuting attorney, and in refusing

the appellant's motion for a bill of particulars. The record and particularly the opinion of the learned trial judge, specially presiding, show that the general atmosphere preceding the trial of the appellant was extremely dramatic and tense. There was an almost unbroken succession of defendants who desired to change their not guilty pleas to pleas of guilty or nolo contendere. Four days were devoted to the taking of such testimony as was deemed relevant by the trial judge. At the end of that period the fact that the appellant herein, one of the 54 defendants arraigned, intended to adhere to his not guilty plea, first became evident. The trial judge, due to the confusion arising from the successive withdrawal of pleas of not guilty and entry of pleas of guilty or nolo contendere by each of the other defendants arraigned, had been under the impression that all of the defendants had changed their pleas, but in the opinion filed, emphasizes the fact that neither the appellant nor his counsel was responsible for this impression. In the meantime the acceptance of the changed pleas, the taking of testimony obviously irrelevant to the conspiracy charge against the appellant, and the imposition of sentence, had all taken place in the presence of the jurors who finally sat as such upon the case against the appellant. Before sentence was imposed on any of the defendants who had pleaded guilty, the attorney for the appellant objected to the hearing of testimony and the imposition of sentence in the presence of the panel of jurors. At this stage of the proceedings the court might have postponed the taking of such testimony until after the trial of the appellant or might have temporarily excluded the jurors from the courtroom. As a result of the failure of the court to thus exercise its discretion, the atmosphere affecting the trial was prejudicial to the appellant from the very outset of the case.

Before any evidence was introduced by the government, the prosecuting attorney made an opening statement to the court in the presence of the jurors. We find that the entire speech is permeated with the personal views of the prosecuting attorney, with insinuations as to his personal knowledge of circumstances surrounding the case and as to the unique position of the government entitling it to a conviction following indictment. We set out a few typical excerpts from the prosecuting attorney's opening statement to the court:

"The evidence will show that the Government could have included one hundred more in this indictment, but we chose to eliminate the minor men and put in about sixty-two that we felt were necessary and that could be convicted."

"All in all, about nine hundred forty conversations would be introduced in evidence in this case, involving every man that is charged in this indictment."

"I will say this, that in all these conspiracy cases, I don't know of one where they have made any mistake and got the wrong man, when they placed an extension on the wire."

"I will say this, the Government has made very diligent search and spent thousands of dollars in attempting to apprehend men that are fugitives from Justice in this case. They have flown to Canada and other parts."

"The conspirators in this case also involve each other. Many statements were given in writing voluntarily by many of these conspirators involving the rest of them. We have all those statements in writing. They involve and give the whole intricate detailed operation of the conspiracy."

"It will probably take two or three, four, five weeks to try one of them; but the Government will go through the testimony to show the conspiracy, as I have outlined it generally here, in order to convict the men that are on trial. I don't care how many there are. We will stay here until the whole matter is presented to the jury."

The trial court overruled the objections made by the appellant to those remarks and denied the motion for the withdrawal of a juror. The Supreme Court in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, in discussing the duties and responsibilities of prosecuting attorneys, said:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should

do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

On the same subject, see the discussions contained in Taliaferro v. United States (C.C.A.) 47 F.(2d) 699; Turk v. United States (C.C.A.) 20 F.(2d) 129; Sunderland v. United States (C.C.A.) 19 F.(2d) 202.

We think that the entire tenor of the prosecuting attorney's statements was decidedly and unfairly prejudicial. It may be noted that in the instant case the jurors who heard the prosecuting attorney's overzealous and prejudicial remarks might have been withdrawn and a new jury impaneled immediately thereafter to hear the case against the appellant without prejudice to the government's position.

A witness called by the government was permitted to testify, inter alia, as to entries contained in a journal kept by the witness as accountant for some of the alleged conspirators referred to as the "syndicate" by the prosecuting attorney. The entries were copied into the journal under the supervision of the witness from information contained on slips given the appellant by members of the "syndicate." The entries purported to represent sales and purchases of nontax-paid distilled spirits by the "syndicate" in 1932 and 1933 as well as during the period involved in the indictment, namely, February 1, 1934, to May 14, 1935. The 1932 and 1933 entries were clearly inadmissible, in that they related to a period not covered by the charges in the indictment. Moreover, the journal should not have been admitted in evidence until such time as a conspiracy involving the appellant as a coconspirator was in fact proved.

Had the books of account been excluded from the evidence, the case against the appellant would have consisted of the contradictory statements of an alleged coconspirator and some telephone conversations between alleged coconspirators in which the appellant's name was mentioned. The jury's conclusions as to the appellant's guilt may have been, and probably were, based, at least in part, upon the wrongfully admitted evidence and the prosecuting attorney's statements in his argument to the effect that the government would not have indicted the appellant had he not been guilty. In view of the prejudicial atmosphere surrounding the case, the unfair arguments of the prosecuting attorney, and the improper admission of the books of account in evidence, we think the appellant was not accorded a fair trial.

Judgment reversed with a venire de novo.