**Leon BEARDEN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19325.**

United States Court of Appeals
Fifth Circuit.

July 10, 1963.

Rehearing Denied Sept. 23, 1963.

See also 307 F.2d 506.

100

R. Gordon Gooch, Houston, Tex., Robert S. Pine, El Paso, Tex., for appellant.

Frederick J. Morton, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and RIVES, Circuit Judges.

TUTTLE, Chief Judge.

Appellant was convicted under three counts in the United States District Court for the Western District of Texas, in El Paso, count one charging the crime of kidnapping,[1] count three [2] charging theft of an aircraft in interstate commerce [3] and count six charging the crime

1. 18 U.S.C. § 1201: "Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away and held for ransom or reward or otherwise, is guilty of a violation of the laws of the United States and shall be punished according to law." (As instructed by the court)

2. Some of the counts were dismissed before trial.

3. 18 U.S.C. § 2312: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft knowing the same to have been stolen, shall also be punished according to law." (As instructed by the court)

of obstructing commerce.[4] From his conviction appellant took an appeal to this court which affirmed the conviction by a divided court.[5] The Supreme Court vacated[6] that judgment of this court under the rule of Elchuk v. United States, 370 U.S. 722, 82 S.Ct. 1574, 8 L.Ed.2d 802, in that government counsel was allowed oral argument when neither appellant nor his counsel was present to present oral argument on his behalf.

Briefly stated, the facts are as follows: appellant and his son boarded in Phoenix, Arizona, a commercial aircraft, which was scheduled to stop in El Paso and then San Antonio, Texas. They had purchased tickets for El Paso. While in flight over New Mexico, appellant and son, with pistols drawn, announced to the pilot and crew that they were taking command of the aircraft, ordered the pilot to make a forty-five degree turn, and told them it was their intention to take the aircraft to Mexico, then Cuba. There was conflicting testimony as to the degree of alteration of the course, if any, of the aircraft. However, the aircraft, if there was any alteration of course, resumed its course immediately after the slight alteration, for the crew *convinced* the appellant that the plane had insufficient fuel to reach the desired point in Mexico, and that it was mandatory to refuel in El Paso, its next scheduled stop. The appellant *permitted* this continuation but had the intention of carrying out his plans thereafter. In the meanwhile the authorities in El Paso were made aware of the situation while the plane was in flight, and had law enforcement officers there at the airport to greet the landing. After a long delayed refueling, during which time appellant and his son allowed most of the passengers to deplane, appellant ordered the crew to get under way, but as the aircraft

was going down the runway the police in pursuing automobiles prevented its becoming airborne by firing bullets into the tires and engines. The officers soon boarded the aircraft and the appellant and son were taken by force with none injured.

At the trial the son pleaded guilty as a juvenile delinquent and the appellant not guilty as to all counts.

The first point raised on this appeal is that the appellant's motion for change of venue should have been granted, in that he was denied a fair trial in the El Paso division of the Western District of Texas. The basis for the motion was that television and radio carried live in the El Paso area the events subsequent to the landing of the aircraft, which events included the attempted take off of the aircraft and arrest of the appellants. Such widespread dissemination of publicity, which included subsequent broadcasts and newspaper coverage, in the El Paso area precluded the possibility of a fair trial there. Most, if not all, of the prospective veniremen had viewed the events which took place at the airport either on television or, as a few of them had, in person.

A motion for change of venue is addressed to the sound discretion of the trial court and should be overruled only upon a showing of abuse of discretion. Allen v. United States, 4 F.2d 688, 698–699 (7th Cir. 1925). We find that the trial court did not abuse its discretion in this case in refusing to order a change of venue. The court was cautious to question the jury as to any possible bias or formed opinions with regard to the case from the jurors' viewing of the events on live or taped television or reading about them in the newspapers. Appellant's main thrust in his argument

4. 18 U.S.C. § 1951: "Whoever in any way or degree obstructs, delays or affects commerce—[that means business between the States]—or the movement of any article or commodity in commerce, by extortion, or attempts or conspires so to do, or commits or threatens physical violence to any person or property in fur-

therance of a plan or purpose to do anything in violation of this law, shall be punished according to law." (As instructed by the court)

5. 304 F.2d 532 (5th Cir. 1962)

6. 372 U.S. 252, 83 S.Ct. 875, 9 L.Ed.2d 732

here is that the events came over *live* to the watching audience and that this is quite different from seeing taped news accounts on television at a later date, or reading about them in the newspapers. What difference in live and taped broadcasts there may be to these television viewers is not such as would automatically remove the discretion possessed by the trial judge. All of the jurymen were able to answer the judge's questions with assurance that they could render a just and impartial verdict, and that they had no preconceived notions as to appellant's guilt or innocence in the case.

A recent Supreme Court decision deserves mention here. Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663. In that case, a few hours after defendant was arrested and charged with murder, a twenty minute taped "interview" was made of defendant in jail, in which interview he admitted the bank robbery, kidnapping and murder. This filmed interview was broadcast over a television station for three straight days, in the city in which the crimes took place [7] and where the trial was to be held, the first broadcast day being the day of the arrest. A motion for change of venue was denied and defendant was later convicted and sentenced to death. Three of the jurymen had seen the taped "interviews" in which defendant confessed. These jurors were challenged for cause but the challenges were denied. The Supreme Court reversed, holding that it was a denial of due process of law to refuse the request for change of venue after the people of the parish

> "had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to the crimes with which he was later to be charged * * * [T]his spectacle * * * in a very real sense *was* Rideau's trial—at which he pleaded guilty to murder. Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality."

That case is decidedly different from the case at bar. The repeated broadcast of a *confession* given by a defendant prior to his trial on the one hand and the witnessing over television of the *arrest* of a defendant on the other would certainly produce completely different impressions on the part of the viewers. In the first case it is hardly conceivable that a defendant would stand a chance of receiving an impartial verdict from a jury made up in whole or part of those who saw the confession. In the latter case this is not necessarily so, and we are persuaded by the language of the Supreme Court in Irvin v. Dowd, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 1642–1643, 6 L.Ed.2d 751 (1961):

> "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

Live television coverage is a mere extension of the rapidity with which the news media cover crimes. In this case the events were broadcast not only in the El Paso area but nationwide. In such a situation as this, where there was no evidence of any bias on the part of the jurors including those who witnessed

---

7. In the case at bar the televised events were carried nationally.

in person some of the events surrounding appellant's arrest, we can not as a matter of law hold that the defendant could not have obtained a fair trial in El Paso. The district judge did not abuse his discretion in denying the motion for change of venue. Moreover, the passage of time now since the event further lessens the likelihood of any harm resulting from the broadcasts when the next trial is held.

The appellant next urges that there was insufficient evidence to sustain a conviction on any one of the three counts.

■ There was ample evidence to warrant the jury's finding that all of the actions of the crew after the forcible takeover were the *appellant's* actions in requiring exactly what was to be done. It is immaterial that he *permitted* the crew to land at the very place where the plane had been scheduled to land. We disagree and affirm the trial court on this ground.

■■ However, we reverse on the next ground urged by appellant, namely, that the judge failed properly to instruct the jury as to the main element of counts one and three of the indictment, both of which charged appellant with *transporting* in interstate commerce.[8] We find that there was substantial evidence[9] which a properly instructed jury could have found appellant guilty on these two counts, but that it was necessary that the jury be carefully instructed as to what "transport" means in the statute. Although the district court did define "extortion," "stolen," and "kidnap," as to the other elements of counts one and three it merely read to the jury the statutory language of these counts. This was not sufficient. The jury could have found that appellant himself was transported,[10] rather than doing the transporting himself. The jury should have been instruct-

ed that in order for appellant to have "transported" the plane and passengers he must have been in actual control or command of the aircraft and that the acts of the crew were not of their own volition but done at his direction. "[W]here the error is so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it necessary to take note of it on our own motion." Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945); see Barry v. United States, 109 U.S.App.D.C. 301, 287 F.2d 340, 341 (1961).

> "In a criminal case, the defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime charged." United States v. Massiah, 307 F.2d 62, 71 (2d Cir. 1962)

■ There are two other errors assigned on this appeal by appellant. The first has to do with appellant's son's plea of guilty as a juvenile delinquent made in front of the jury which convicted appellant. There was no cautionary instruction not to consider this plea made to the jury by the district judge. As we said in Scarborough v. United States, 232 F.2d 412, 414 (5th Cir. 1956):

> "When appellant chose to exercise his constitutional right of pleading not guilty, after his fourteen co-defendants had entered pleas of guilty, only the utmost care and caution on the part of Government counsel and of the court could assure him a fair and impartial trial."

See also Babb v. United States, 218 F.2d 538 (5th Cir. 1955).[11]

No motion was made on behalf of the appellant in connection with this phase of the trial. If we were not reversing the

---

8. See footnotes 1 and 3, supra.

9. The First Officer testified that the plane veered off its course for a few seconds.

10. Although the First Officer testified that the plane changed course and was then brought back, the Captain testified that it continued on its regular course.

11. "A defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a Government witness or co-defendant has pled guilty to the same charge." 218 F.2d at 542.

life sentence under count one we might consider the failure of the court to caution the jury as plain error denying appellant substantial justice. However, in view of the failure of counsel to raise the point and in view of the fact that the evidence of appellant's guilt under count six is overwhelming, we think we should disregard this failure of the court as not "affecting substantial rights." Fed.R. Crim.P. 52(a).

■ As to appellant's final point, we need not decide whether it was reversible error for the district judge to instruct the jury not to consider the recently enacted, but inapplicable, aircraft piracy statute. Such an instruction has no applicability to the alleged crime here and should not be given, of course, on a new trial. There is no ground for reversal of appellant's conviction on count six, the alleged interference with interstate commerce. The judgment and sentence on that count will therefore stand.

The judgment and sentences as to counts one and three are vacated and set aside and the case is remanded for a new trial as to those counts.

Judgment affirmed in part and reversed in part.

On Petition for Rehearing

PER CURIAM.

It is ordered that the petition for rehearing filed in the above styled and numbered cause be, and the same is, hereby denied.

In his motion appellant complains of the failure of the Court expressly to deal with the action of the trial court overruling appellant's challenge for cause of the entire panel from which the jurors were selected. We conclude that the overruling of that challenge is not reversible error for the same reasons assigned for holding not reversible the denial of appellant's motion for change of venue.

The Court expresses its appreciation to appointed counsel for the able and vigorous manner in which appellant's case has been presented here.