**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rufus Eafie HARRELL, Defendant-**
**Appellant.**

**No. 28126.**

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 1970.

Euel A. Screws, Jr., Montgomery, Ala., for defendant-appellant; James Prestwood, Andalusia, Ala., and Hobbs, Copeland, Franco Riggs & Screws, Montgomery, Ala., of counsel.

Ira DeMent, U. S. Atty., D. Broward Segrest, Wm. H. Thomas, Asst. U. S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before SIMPSON, MORGAN and INGRAHAM, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant, Rufus Eafie Harrell, and a co-defendant Durwood Norris were indicted together on five counts alleging violation of the Internal Revenue Laws pertaining to non-tax paid distilled spirits. Prior to Harrell's trial, Durwood Norris pled guilty to all counts except Count Five which was dismissed. That count charged Norris alone with possession of an unregistered distillery on September 21, 1968. Harrell went to trial on his plea of not guilty to the remaining four counts of the indictment. Count One charged Harrell and Durwood Norris with entering into a conspiracy to violate the revenue laws between September 5, 1968 and September 22, 1968. Durwood Norris' son, Thomas Richard Norris, was named as a co-conspirator but not as a co-defendant. Counts Two and Three charged Harrell and Durwood Norris with sales of non-tax paid spirits: 50 gallons on September 5, 1968, and 50 gallons on September 6, 1968, in violation of Chapter 51, Title 26, U.S. Code. Count Four charged the two defendants with possession of 200 gallons of non-tax paid spirits on September 21, 1968, also in violation of Chapter 51, Title 26, U.S.Code. The particular section involved under all three counts is Title 26, U.S.C., Section 5604. The substantive offenses charged by Counts Two, Three and Four or evidentiary portions of them were the basis for the six overt acts laid in the conspiracy count, Count One.[1]

Harrell was found guilty by the jury as to each of the four counts on trial and received a general sentence to thirty months custodial confinement. This appeal timely followed. We reverse on the basis of what we conceive to be demonstrated prejudicial error infecting Harrell's conviction as to each count.

---

1. The overt acts alleged under Count One were:

"OVERT ACTS

1. On or about September 5, 1968, at, to-wit, 8:30 P.M., RUFUS EAFIE HARRELL and DURWOOD D. NORRIS engaged in a conversation at or near the residence of Durwood D. Norris situated in Covington County, Alabama, approximately 9½ miles southwest of Opp, Alabama.

2. On or about September 5, 1968, at, to-wit, 9:20 P.M., and at a point, to-wit, one mile north of Enon Church in Covington County, Alabama, Rufus Eafie Harrell, Durwood D. Norris and Thomas Richard Norris loaded 50 one-gallon glass jugs containing 50 gallons of non-tax paid distilled spirits into an automobile.

3. On or about September 5, 1968, at, to-wit, 9:40 P.M., and at a point, to-wit, one mile north of Enon Church in Covington County, Alabama, Rufus Eafie Harrell received $250.00 in payment for 50 gallons of non-taxpaid distilled spirits.

4. On or about September 6, 1968, at, to-wit, 8:35 P.M. and at a point, to-wit, 300 yards from his residence in Covington County, Alabama, Durwood D. Norris loaded 50 gallons of non-taxpaid distilled spirits contained in 50 one-gallon jugs into an automobile.

5. On or about September 6, 1968, at, to-wit, 9:00 P.M. and at a point, to-wit, 300 yards from his residence in Covington County, Alabama, Durwood D. Norris received $237.50 in payment for 50 gallons of non-taxpaid distilled spirits.

6. On or about September 21, 1968, at, to-wit, 8:30 P.M., Durwood D. Norris directed William K. Sams to a stash of non-taxpaid distilled spirits, which was situated at, to-wit, 300 yards from the residence of Durwood D. Norris in Covington County, Alabama, and which stash contained, to-wit, 200 gallons of non-taxpaid distilled spirits."

## I. *The Evidence*

We set out below portions of the prosecution's evidence, stated in the light most favorable to the government's case, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, and extracted largely from the testimony of the government's witnesses. We also refer to additional evidence which bears upon the grounds of error asserted. The key government witness was William Sams, a special investigator with the Alcohol, Tobacco and Firearms Division of the U. S. Treasury Department, whose function in this case was that of an undercover agent. Sams related that on the afternoon of September 5, 1968, he drove to the appellant's farm residence posing as an illicit whiskey dealer, and after leisurely, friendly conversation gained Harrell's confidence. He inquired of Harrell as to the possibility of purchasing moonshine. Harrell indicated that he knew where a supply was available at $5.00 per gallon and at Sams' request accompanied Sams to the Norris farm, several miles away where the first 50 gallon purchase (charged in Count One) took place. The location was about 9½ miles southwest of Opp, Alabama. Harrell and Norris conferred outside Sams' hearing and Harrell returned to Sams' car and directed the agent to drive to a location about 250 yards from the Norris residence. Norris and his son joined them at this point, driving a 1960 Chevrolet station wagon, which contained 50 one-gallon jugs of non-tax paid moonshine whiskey. The whiskey was off-loaded to the ground by the two Norrises, Harrell and Sams. Sams asked Harrell about securing some paper bags to place around the jugs, whereupon Harrell and the older Norris left and returned with several fertilizer bags to wrap around the jugs. The sale was then completed and the jugs loaded into the undercover agent's vehicle. The agreed price of $5.00 per gallon was paid by Sams to Harrell, who

placed the money in his pocket. Harrell asked Sams if he would need more whiskey and Sams replied that he would need another 50 gallons the following night. Harrell instructed Sams not to come by his house on that occasion but to go directly to Norris' house and that Norris would take care of him. Sams then drove to a pre-arranged meeting with other agents who assisted in the destruction of the 50 gallons of non-tax paid whiskey.

On September 6 Sams returned to Norris' house as instructed by Harrell. He was joined by Norris, who directed him to a non-tax paid whiskey "stash" (caché) where 50 gallons of whiskey were loaded into the Sams' vehicle, Sams paying Norris therefor. On this occasion price was discussed and a bargain was struck for Sams to purchase 200 gallons at the reduced price of $4.50 per gallon. Norris told Sams to call Harrell on "Tuesday a week" (September 17) to see whether the 200 gallons of whiskey were available. Sams dropped Norris at his residence and again drove the vehicle to a pre-arranged location where he and other agents destroyed the recently purchased whiskey.

On September 20 Sams placed a person-to-person call to Harrell's residence, spoke with Harrell and was told that the 200 gallons of whiskey would be ready on the following night. On September 21, with ATFD Agent Williams, Alabama ABC[2] Agent Catrett, and Chief Deputy Sheriff Berry of Covington County concealed in the trunk of his automobile, Sams drove to Harrell's residence. Harrell informed Sams that he was going to town with his wife and that Sams should go directly to Norris' home where the whiskey was available. He arrived at Norris' residence and was joined in the car by Norris and directed to a location in the close vicinity of the two previous purchases, where he saw a "stash" of numerous one-gallon jugs, later counted to be 200, and later found to

---

**2.** Alcohol Beverage Control Board, the Alabama statutory authority charged with the regulation of the manufacture and sale of alcoholic beverages. Code of Alabama Recompiled 1958, Title 29, Sections 1–78.

contain non-tax paid whiskey. Norris was arrested and advised of his constitutional rights, and the four officers proceeded to destroy the whiskey on the spot. Later that night or in the early morning hours of September 22 the appellant Harrell was arrested at his own home.

Sams was permitted to testify at trial over the defendant's objection that on the night of the arrest the agents discovered a complete illicit distillery, set-up, a number of drums of fermenting mash, and 35 gallons of non-tax paid whiskey, at a point about 300 yards from the place of Norris' arrest. Neither possession of the distillery nor the manufacture of distilled spirits was charged as an object of the conspiracy, those objects being described as the removal, concealment, possession, transportation, sale and transfer of non-tax paid whiskey with intent to defraud the United States. No overt act charged in Count One dealt with the possession of a distillery or the fermenting mash,[3] and as already related above neither substantive count for which Harrell was on trial was concerned with the possession of a distillery or the fermenting or possession of mash.[4]

During the trial, and again over defense objection, Agent Williams testified that after the arrest of Norris and the discovery of the still Norris made a statement to him on the way to jail. We quote Williams' testimony in this respect:

"Norris stated that the still belonged to him; he said it had been there about three or four months and that he had put it there to help pay off the farm".

There was testimony at the trial relating to a prior "feud" or vendetta between Harrell and Alabama ABC Agent Catrett, one of the officers participating in the arrest. Both sides eventually of-fered testimony as to this feud, although it was first gone into over defense objection by the government's trial attorney in his cross-examination of the appellant Harrell. This incident—which occurred several weeks prior to the conspiracy dates—involved the exchange of heated words and purported threats of bodily injury to Catrett because of the agent's presence in and near Harrell's watermelon field, without permission, apparently searching for evidence of moonshine activity. Catrett on cross-examination by defense counsel denied any right to direct Sams to undertake undercover activities, but did admit that he suggested that they be carried out.

The appellant offered testimony of three witnesses as to his good reputation generally in the community and also as to his good reputation for truth and veracity. The government attorney on cross-examination questioned these defense character witnesses as to Harrell's general reputation for being in the whiskey business "prior to this indictment". All had heard of a prior whiskey conviction, but one witness pointed out that this had no bearing on a reputation for being truthful. No objection was offered to this cross-examination. The defense rested at this point and the government recalled Federal Alcohol Tax Agent Williams for rebuttal testimony. Williams was questioned as to his knowledge of Harrell's "general reputation in the community for being in the illicit whiskey business, prior to this indictment". The witness answered "Yes sir", and defense counsel immediately objected. The trial judge excused the jury and sustained the objection but denied a motion for mistrial and refused to instruct the jury to disregard the question saying "Well, I am not going to try and eradicate it, other than to tell the jury that what the lawyers say is not evidence; I don't see that it is high-

---

3. See footnote 1 above.

4. As noted earlier Count Five had charged Norris with possession of an unregistered distillery on September 21, but this count did not involve Harrell and had already been dismissed as to Norris. Additionally Norris was not then on trial, having previously pled guilty.

ly prejudicial. He's testified he has been in the whiskey business".[5] There the matter rested except that the jury was so instructed as a part of the general charge.

Norris' guilty plea was entered March 26, 1969, several months prior to Harrell's trial commencing June 5, 1969. Norris and his counsel sought then to make it clear to the court and to counsel for the government that he was pleading guilty to each count "except to the still", but that as to Count One he was not pleading guilty to conspiring with Harrell, or with his son, Thomas Norris. His counsel stated unequivocally that he intended to plead guilty only to conspiring with the "distilling fellows" or with the "other persons to the Grand Jury unknown" alleged by the indictment to be members of the conspiracy. The court pointed out that Norris was either guilty or not guilty as to Count One, and that if he pled guilty it would have to be "as charged". It was then stated and apparently understood by court and opposing counsel that the other persons identified in the indictment by name (Harrell and the younger Norris) were not parties to any such conspiracy to Norris' knowledge.

During the trial Norris took the stand in Harrell's defense, stating that he sold the whiskey to Sams (known to him as Billy Sanders), after Harrell introduced him, that he had no knowledge of the still, which although nearby was not on his land, and that he had purchased all the whiskey sold to Sanders from a man at the still known to him as William Jones. Norris was unequivocal in asserting that when Sanders tried to pay Harrell on the occasion of the first sale Harrell refused the money and Sanders gave it to him (Norris). On cross he admitted pleading guilty to all counts of the indictment " * * * except the still; I didn't accept the still". He could not remember whether he admitted to one of the officers on the night of his arrest that he owned the still: "I might have told them a lot of things—that I was all shook up".

In his own defense Harrell also denied connection with the actual transactions, but stated that on September 5, after about one and a half hours general conversation about farming and life in general (never about whiskey), he first gave Billy Sanders (Sams) directions, upon inquiry, as to how to reach Durwood Norris' home, and that Sanders left to go there. He stated that Sanders came back between sundown and dusk and asked him to ride with him, and point the way to Norris' place, and that he obliged. He had no knowledge that whiskey was involved until he saw it, he refused money for it, and took no part in moving the whiskey on the first occasion. He testified to two other occasions when he refused to accompany Sanders to Norris' home: once on September 21, and once a week earlier, despite Sanders' importunity on the ground of unfamiliarity with local country roads. He denied receiving the September 20 phone call from Sams as to the 200 gallons being ready, and further denied any conversation about whiskey with Sams when Sams came to his home September 21.

## II. The Grounds of Error Asserted

The first ground of claimed error is that Harrell was entitled to, and was denied, an affirmative charge that entrapment had been established as a matter of law and that he should accordingly be acquitted. The court submitted the defense of entrapment to the jury after some hesitation because of the government's position as to the implications inherent in Harrell's denials of commission of the offenses charged. We think this course was proper despite appellee's contention to the contrary, under the teachings of Sears v. United States, 5 Cir. 1965, 343 F.2d 139, where we inquired into "whether entrapment is an unavailable defense to one who, as Sears does here, denies commis-

---

5. On cross-examination, Harrell had admitted a prior state whiskey conviction.

sion of the acts charged". We there held that where a defendant does not have to take an inconsistent position, he is not precluded from invoking entrapment as a defense. Harrell did not have to take an inconsistent position and could properly assert, as we said the defendant did in Henderson v. United States, 5 Cir. 1956, 237 F.2d 169, 173, that "I did not go so far as to become a party to the conspiracy, but to the extent that I did travel down the road to crime, I was entrapped."

■■ We are of the view, however, that the question of entrapment in this case was properly for decision by the jury as a factual matter, not by the trial judge as a matter of law. Goss v. United States, 5 Cir. 1967, 376 F.2d 812; Cline v. United States, 8 Cir. 1920, 20 F.2d 494. As stated in *Goss*, supra: "The issue of entrapment is a question for the jury unless as a matter of law the defendant has established beyond a reasonable doubt that he was unlawfully entrapped." Here, it is apparent that the evidence was susceptible of more than one interpretation.

■ A related question arises because of the court's failure to instruct the jury as to the government's burden of proof beyond a reasonable doubt as to no entrapment, once the defendant has come forward with some evidence of inducement. Although apparently never specifically adopted by this Circuit, this is the accepted rule.[6] We would follow *Notaro*, and reverse for the trial court's error in this respect, if objection had been timely made to the charge, as required by Rule 30, F.R.Crim.P. See also Kivette v. United States, 5 Cir. 1956, 230 F.2d 749, cert. denied 355 U.S. 935,

78 S.Ct. 419, 2 L.Ed.2d 418; United States v. Sherman, 2 Cir. 1952, 200 F.2d 880, 882, 883. But the dereliction was not brought to the trial court's attention, and since the case must be reversed on other grounds, we pretermit discussion of whether "plain error" is thus presented, under Rule 52(a), F.R.Crim. P. Of course, upon retrial the trial judge should follow *Notaro* standards in his jury instructions if entrapment is again offered as a defense.

■ Error is asserted in permitting evidence to go to the jury regarding the finding of the distillery, with its component parts, fermenting mash and 35 additional gallons of "moonshine" immediately after Norris' arrest and within a few hundred yards of the "stash" of 200 gallons. The basis of this objection is that no charges against Harrell under any count of the indictment concerned this evidence. We think this still discovery was clearly a circumstance proper to be weighed by the jury in connection with the government's required burden of proof of the defendant's knowledge and intent under Count One, the charge of conspiracy. Relevant and closely connected circumstances may ordinarily be proved under charges of conspiracy, even though not the subject of overt acts or substantive counts.[7]

■ Likewise without merit is the claim that prejudicial error occurred when evidence was permitted to go to the jury regarding the prior "feud" between appellant and other law enforcement officials. This was probative of Harrell's pre-disposition to commit the offenses charged and went directly to sustaining the government's burden of proving no entrapment, albeit as a cir-

---

6. See Notaro v. United States, 9 Cir. 1966, 363 F.2d 169, where there are set forth the procedural guidelines to be followed once the entrapment issue is raised, and also the following cases: Sagansky v. United States, 1 Cir. 1966, 358 F.2d 195; Johnson v. United States, 1963, 115 U.S.App.. D.C. 63, 317 F.2d 127; United States v. Landry, 7 Cir. 1958, 257 F.2d 425; Lunsford v. United States, 10 Cir. 1952, 200 F. 2d 237.

7. See generally, as to the wide latitude to be allowed in admission of proof in conspiracy cases, the following: Wangrow v. United States, 8 Cir. 1968, 399 F.2d 106, 115, cert. denied 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270; Nye & Nissen v. United States, 9 Cir. 1948, 168 F.2d 846, affirmed 336 U.S. 613, 69 S.Ct. 766, 93 L. Ed. 919; United States v. Von Clemm, 2 Cir. 1943, 136 F.2d 968, cert. denied 320 U.S. 769, 64 S.Ct. 81, 88 L.Ed. 459.

cumstance of no great probative weight. Furthermore, the fact that agents were snooping around his fields a month earlier was as likely to create sympathy for Harrell in the jury's eyes as otherwise, which is to say that we cannot find the admission of this testimony prejudicial, even if conceded to be of doubtful relevance.

We repudiate as insubstantial the further claim that error occurred when the prosecution was allowed to ask questions as to Harrell's reputation for being in the whiskey business, both in cross of Harrell's reputation witnesses and of Agent Williams in rebuttal. This is so for two reasons: (1) because Harrell had himself put in issue his reputation for being a law-abiding citizen, and the questions asked went to meet the issue, and (2) because we cannot conceive of any harmful effect flowing to an admittedly convicted manufacturer of and dealer in unlawful whiskey from testimony as to his *reputation* for being in the whiskey business.

Having disposed of the questions raised which in our judgment do not rise to the level of reversible error, we turn now to two loosely related matters occurring at the trial which we think require reversal and retrial.

First, we are of the view that it was harmful error to admit, over objection, the post-arrest statement of Norris to Williams to the effect that he (Norris) owned the still, that it had been there three or four months, and that he put it there to help pay off the farm. This was prejudicial to Harrell's case.

It is established law, at least since Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, and under so many cases prior to and following *Krulewitch* that it would be an affectation to cite them, that acts and declarations of co-conspirators are binding upon each member of the conspiracy, if made during the life of the conspiracy and in furtherance of any of its objects. There was of course ample evidence present from which the jury was entitled to infer that Norris and appellant were co-conspirators. Hence any statements made by Norris during and in furtherance of the conspiracy were admissible in Harrell's trial. Here is precisely the trouble. With his arrest, Norris' part in the conspiracy was over. Further and of decisive significance, admission of ownership of the distillery to a known government agent could not possibly advance any object of the conspiracy. If Norris had been on trial, this admission if proved voluntary would have been admissible against him only; it could never be properly received in proof of Harrell's guilt.[8] Scarborough

8. The following quotation from the trial court's general charge while not itself objected to, graphically shows the manner in which the erroneous admission of Norris' post-arrest statement was emphasized to the jury:

"Now, if and when it appears from the evidence in the case that a conspiracy existed, if it does in this case, and that Eafie Harrell was one of the members, then the acts thereafter knowingly done and the statements thereafter knowingly made by any person likewise found to be a member of the conspiracy may be considered by you jurors as evidence in the case as to each member of the conspiracy, including the defendant, if you find that a conspiracy existed and that he willfully and knowingly became a member of it. *That is the reason that the Court admitted for your consideration evidence as to what Nor-* *ris did and as to what Norris said outside the presence of the defendant, so that you might have that evidence in the event it became appropriate for you to give consideration to it.* Ordinarily, any admission or incriminatory statement made outside of court by one person may not be considered as evidence against any person who was not present and heard the statements made, but this is an exception to that rule". (Emphasis added)

The instruction fails to limit consideration of the declaartions of a co-conspirator to those made in furtherance of the conspiracy and during its existence. It then focuses directly upon the acts and *declarations* of Norris in the language emphasized by our italics. This was the equivalent of saying to the jury: "The court directs you to look to statements of Norris for proof of Harrell's guilt".

v. United States, 5 Cir. 1956, 232 F.2d 412. Cf. Evans v. Dutton, 5 Cir. 1968, 400 F.2d 826, probable jurisdiction noted 393 U.S. 1076, 89 S.Ct. 862, 21 L.Ed.2d 770; restored to calendar for reargument 397 U.S. 1060, 90 S.Ct. 1494, 25 L. Ed.2d 682.

We hold further, despite the fact that it came in without objection, that permitting the jury to hear proof as to Norris' pre-trial plea of guilty, particularly without proper limiting instruction, was, as to both the conspiracy count and the substantive counts, error of such proportions as to require reversal. We are slightly more certain of our ground as to the conspiracy count, but analysis of the jurisprudence leads us to conclude that "plain error" occurred as to the substantive counts also. Rule 52(b), F.R.Crim.P. It clarifies our reasoning to deal with the effect as to conspiracy and substantive counts separately.

Our discussion of the prejudicial effect of permitting testimony as to Norris' prior pleas of guilty should be clearly understood as limited to the facts before us. We are not here at all concerned with the case where proof of a co-defendant's guilty plea is offered for a recognized evidentiary purpose,[9] and an appropriate accompanying instruction is given limiting the jury's consideration of the guilty plea to the evidentiary purpose for which the evidence as to it was received. No purpose was stated, none was required by the trial court to be stated, when the question of Norris' prior guilty pleas was introduced. The legitimate presumption is that the evidentiary purpose was the general one of demonstrating Harrell's guilt of the offenses for which he was on trial.

As to the first count, we have already noted that Norris and his counsel repeatedly pointed out that he was pleading guilty to conspiring with the "distilling fellows", not with Harrell. But this attempt to limit the nature of the plea, or more properly the nature of the admissions implicit in it, was never called to the jurors' attention during the trial. The impression was left that somehow the plea of guilty was inconsistent with Norris' testimony at trial: that proof of the plea of guilty was in the nature of impeachment of Norris' trial testimony, or worse yet, that it somehow proved Harrell's guilt. No limiting instruction was given when the evidence as to the guilty plea was received. The only remotely cautionary statement during the court's general jury instructions was during the opening sentences of his charge:

"The indictment in this case was returned February 6 of this year. It charges Durwood D. Norris and Rufus Eafie Harrell jointly in four separate charges. The guilt or innocence of Rufus Eafie Harrell must be determined separately from that of Durwood D. Norris. You are not concerned in this case, to the extent that it will be necessary for you to make a finding of guilt or innocence, with Durwood Norris. Of course, you are concerned with his participation in this case and the matters concerning which he and the other witnesses testified as to the part he played in it—but it will not be necessary for you to make any finding on the guilt or innocence of Norris. It will be necessary for you to find guilt or innocence of Rufus Eafie Harrell separately on each of the four charges in the indictment".

That was all. Nothing was said to dispel the predictably certain reasoning a juror could be expected to indulge in: If Norris, *as admitted*, was guilty of conspiring with Harrell, how then could Harrell be other than guilty of conspiring with Norris? Jurors equally with others are aware that "it takes two to tango".

With respect to Harrell's guilt or innocence, Norris' plea of guilty was no more and no less than an inadmissible hearsay statement—made long after the conspiracy had ended—that he and Har-

---

**9.** For instance, as impeachment of trial testimony, or as affecting credibility as a witness because of previous felony conviction.

rell had indeed conspired together as the indictment charged. Despite the failure of trial counsel (not the counsel representing Harrell on this appeal) to object, we are firm in the view that "plain error" occurred as to Count One.[10] Over and beyond the considerations usually present, Norris' unavailing and repeated attempts to make clear to the trial court that his guilty plea was not intended to implicate Harrell in any way, we think were aggravating circumstances that should at the very least have impelled clear warnings from trial court to jury as to the effect to be given Norris' plea.

Regarding the claimed harmful effect upon Harrell's right to a fair trial engendered by proof of Norris' guilty plea to Counts Two, Three and Four, the substantive counts, while the reasons for our decision are perhaps less compelling than the grounds for our holding as to Count One, we believe that prejudicial error occurred in this respect as to these counts also.[11]

10. See 4 A.L.R.3d, page 709, as to the harmful and prejudicial effect, as to one alleged conspirator, of the receipt in evidence of proof of the guilty plea of a co-conspirator. Accord, see Trussell v. United States, 6 Cir. 1960, 278 F.2d 478; United States v. Hall, 2 Cir. 1950, 178 F.2d 853; United States v. Toner, 3 Cir. 1949, 173 F.2d 140. Our research as to Fifth Circuit cases yields no clear answer as to the effect of receiving guilty pleas of co-conspirators. In Babb v. United States, 5 Cir. 1955, 218 F.2d 538, we reversed a conviction where a co-defendant (and described in the opinion as an "alleged co-conspirator") was permitted to testify, *over objection*, that he had pled guilty to all five counts of the indictment, citing LeRoy v. Government of Canal Zone, 5 Cir. 1936, 81 F.2d 914 (discussed infra), stating:

> "Appellant's co-defendant and alleged co-conspirator, Broussard, a witness for the Government, was permitted to testify over objection that he had plead guilty to all of the counts of the indictment. This was error. This court held in LeRoy v. Government of Canal Zone, 5 Cir., 81 F.2d 914, that it was error to admit judgments of conviction of two other defendants not on trial. We see no difference between admitting a judgment of conviction and permitting a co-defendant to testify to the same thing. Practically all the decisions now hold that it is error for the court to instruct the jury that they may consider the fact that co-defendants have plead guilty.

> "Appellant not only objected to Broussard's testimony as to his plea of guilty but requested the court to instruct the jury that they should not consider that fact for any purpose as bearing upon his guilt. We think this charge should have been given. A defendant is entitled to have the question of his guilt determined upon the evidence against him, not on

whether a Government witness or co-defendant has plead guilty to the same charge." (Footnotes omitted)

Our difficulty with *Babb* is that although Broussard is stated to be an "alleged co-conspirator" the quotation of what is said to be a count typical of all counts charges Babb, Broussard and a third person, Gilly, with a substantive offense, namely the willful and fraudulent transportation and concealment of Charolaise cattle with knowledge of their illegal importation, in violation of Title 18, U.S.C., Sec. 545.

We also note our case of Elder v. United States, 5 Cir. 1954, 213 F.2d 876. There we affirmed the conviction of Elder for conspiracy to violate the Dyer Act despite the fact (1) that an alleged co-conspirator, Austin, had pled guilty to the offense in the presence of the jury venire a day or so before Elder's trial began, (2) that this was verified by questions to Austin, over defense objection, during Austin's testimony as a government witness, and (3) government counsel commented on Austin's guilty plea during his jury summation. The refusal to reverse was based on the trial judge's cautionary instruction that the jury was not to consider Austin's plea of guilty as an indication of the guilt of the defendant on trial, Elder.

11. Because our Circuit has spoken on the subject on several occasions, and in the interest of shortening this opinion, we pretermit discussion of the development by decisions of other circuits of the principles involved. Anyone interested in pursuing the subject should examine, for example, Minker v. United States, 3 Cir. 1936, 85 F.2d 425; Nigro v. United States, 8 Cir. 1941, 117 F.2d 624, 632, 133 A.L.R. 1128; United States v. Hall, 2 Cir. 1950, 178 F.2d 853; Payton v. United States, 1955, 96 U.S.App.D.C. 1, 222 F.2d 794, 796; Trussell v. United States, 6 Cir. 1960, 278 F.2d 478; Koolish v.

It suffices to start our discussion of this Circuit's decisions with LeRoy v. Government of Canal Zone, 5 Cir. 1936, 81 F.2d 914, which of course predated Criminal Rule 52(b)'s "plain error" command.[12] There the point was preserved for appellate review by timely objection to receipt in evidence of proof of the conviction after not guilty pleas and trial of LeRoy's two co-defendants under a substantive charge of theft. Judge Richard W. Walker for this Court wrote succinctly and to the point:

"Where two or more persons have been jointly charged with the same criminal offense, but one of them is separately tried after the others have been convicted, the judgment of conviction on that charge against the latter is not admissible in evidence against the one of those persons who is separately and subsequently tried on such charge. The previous conviction of others charged with the same criminal offense is not proof of appellant's guilt of that offense. People v. Kief, 126 N.Y. 661, 27 N.E. 556; State v. Bowker, 26 Or. 309, 38 P. 124; Campbell v. State, 133 Ala. 158, 32 So. 635; 16 C.J. 670. The judgment is reversed."

In Babb v. United States (supra, footnote 10), we reversed the conviction because the trial court permitted proof of a co-defendant's guilty plea over appellant's objection, and also refused a limiting instruction that the co-defendant's plea should not be considered as bearing upon appellant's conviction. *Babb* equated proof of a co-defendant's guilty plea with proof of a co-defendant's conviction after trial, LeRoy v. Government of Canal Zone, supra.

In Scarborough v. United States, 5 Cir. 1956, 232 F.2d 412 (reversed for permitting an officer to testify in a conspiracy trial with a single defendant on trial to a co-defendant's post-arrest statement that he got all his whiskey from the appellant) we pointed out:

"When appellant chose to exercise his constitutional right of pleading not guilty, after his fourteen co-defendants had entered pleas of guilty, only *the utmost care and caution on the part of Government counsel* and of the court could assure him a fair and impartial trial." (Emphasis added) 232 F.2d at page 414.

Further in the same opinion we observed:

"It is now horn-book law that statements of alleged co-conspirators made outside the presence of the defendant are not admissible against him, unless made during the progress of the conspiracy and in furtherance of its objects." 232 F.2d at page 415.

■ We interject that it is perhaps even clearer "horn-book" law that *unless the charge is conspiracy,* the statements of a co-defendant made outside the presence of the defendant on trial are *never* admissible. We emphasize our view that proof of Norris' guilty plea, equally as to all four counts on trial, was hearsay as to Harrell.

The next case from this Circuit to be noted is Bearden v. United States, 5 Cir. 1963, 320 F.2d 99. Appellant's conviction for kidnapping (Title 18, U.S.C., Sec. 1201), transportation of a stolen aircraft in interstate commerce (Title 18 U.S.C., Sec. 2312), and for obstructing commerce (Title 18, U.S.C., Sec. 1951) was reversed on other grounds, but we made the following significant comment with respect to permitting a plea of guilty as a juvenile delinquent by the appellant's minor son to be entered in the jury's presence:

"There was no cautionary instruction not to consider this plea made to the

United States, 8 Cir. 1965, 340 F.2d 513; United States v. Kimbrew, 6 Cir. 1967, 380 F.2d 538; Freije v. United States, 1 Cir. 1967, 386 F.2d 408, 411.

12. Rules of Practice and Procedure, promulgated by the Supreme Court May 7, 1934, governed appellate procedure in federal criminal cases in 1936. Claims of error at trial were preserved for review by settling the Bill of Exceptions, under Rule IX of those Rules, in conformity with then Rule 8 of the Rules of the Supreme Court of the United States.

jury by the district judge. As we said in Scarborough v. United States, 232 F.2d 412, 414 (5th Cir. 1956):

'When appellant chose to exercise his constitutional right of pleading not guilty, after his fourteen co-defendants had entered pleas of guilty, only the utmost care and caution on the part of Government counsel and of the court could assure him a fair and impartial trial.'

See also Babb v. United States, 218 F.2d 538 (5th Cir. 1955).

*No motion was made on behalf of the appellant in connection with this phase of the trial. If we were not reversing the life sentence under count one we might consider the failure of the court to caution the jury as plain error denying appellant substantial justice.* However, in view of the failure of counsel to raise the point and in view of the fact that the evidence of appellant's guilt under count six is overwhelming, we think we should disregard this failure of the court as not 'affecting substantial rights.' Fed.R. Crim.P. 52(a)." (Emphasis added)

We turn finally to this Court's decision in United States v. Baete, 5 Cir. 1969, 414 F.2d 782. Lindsey, Baete's co-defendant in that Dyer Act prosecution testified, without objection and without request for a limiting instruction that he (Lindsey) had earlier pled guilty to the charges. We were urged by appellant, relying upon Babb v. United States, supra, to hold that plain error had occurred. Despite the lack of objection and the lack of request for a limiting instruction the trial court in *Baete* *sua sponte* charged the jury not to consider Lindsey's guilty plea in determining the innocence or guilt of Baete.

We affirmed, distinguishing *Babb* in two respects: (1) the failure to object, and (2) the court's giving of a cautionary instruction. But we issued a stern caveat in these terms:

"In cases where the jury has become aware of a codefendant's guilty plea,

we think the appellate court should carefully focus its attention on the sufficiency of the corrective instruction. The significance of remedial instructions in such circumstances is pointed out in Freije v. United States wherein the court observed:

It is generally held that it is proper to receive the guilty plea of a codefendant, even in the presence of the jury, but this *presupposes* that cautionary instructions are given. (Emphasis added)

We recognize the fact that there may be aggravated circumstances in which the strongest corrective instruction would be insufficient, as, for example, where the guilty plea of one codefendant necessarily implicates another or others. However, in the absence of such circumstances, we think that a clear and strong cautionary instruction should be deemed sufficiently curative. In the instant case, the trial court's instruction was clearly sufficient." (Footnotes omitted)

As we stated at the outset, the grounds for reversal are slightly less unclouded as to Counts Three, Four and Five than as to Count One, the conspiracy count. This is so *only because of the result reached in Baete.* But, because there are here present the "aggravating circumstances" alluded to in *Baete,* because of the failure of the trial judge to give any sort of cautionary instruction, and because of the strong dicta quoted *supra* from the *Bearden* court, we are constrained to the view that plain error was committed when proof of Norris' guilty plea to Counts Two, Three and Four, as well as to Count One, was allowed to go to the jury without any limiting instruction whatever.

*Again, we decide only the case before us. But we think that the evidentiary purpose ordinarily to be served by proof of a co-defendant's plea of guilty is so shadowy, so insubstantial that it would be the better practice in run-of-the-mill cases to exclude such proof altogether.*

The judgment of conviction below is reversed for further proceedings not inconsistent herewith.

Reversed.