## UNITED STATES v. BRAMSON et al.
### No. 48.

Circuit Court of Appeals, Second Circuit.
Nov. 19, 1943.

Bertha Rembaugh, of New York City (Martin J. Forgang, of New York City, of counsel), for appellant Robert North.

George Wolf, of New York City (Victor Feingold, of New York City, of counsel), for appellants Bramson and Reliance Underwriting Corporation.

James B. M. McNally, of New York City (Thomas F. Murphy, of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Defendants Bramson and Reliance Underwriting Corporation complain principally of alleged errors in connection with the testimony of a government witness Robinson, a post office inspector and accountant. There were received in evidence summaries or recapitulations prepared by Robinson, from the books and records of Commonwealth, of all the certificates that were redeemed in series F and G. Defendants complain that it was not shown that Robinson's testimony and his summaries were based upon the complete books and records. These books and records had been introduced ·in connection with the testimony of a witness Miss Benson, treasurer and assistant secretary of

Commonwealth. When on the stand, she was unable to find two or three certificates; but the records were admitted in evidence with leave to defendants to move to strike out her testimony and the records; no such motion to strike out was thereafter made. It was accordingly proper to receive in evidence Robinson's summaries based on the records. Cf. United States v. Schenck, 2 Cir., 126 F.2d 702, 708-709. Defendants also objected to the admission in evidence of certain charts prepared by Robinson, on the ground that they were prepared on the basis of an improper interpretation by Robinson of two identical clauses in the two trust agreements. The trial judge agreed with that interpretation, pointing out that the clauses on their face were ambiguous and that the interpretation on which Robinson had based his charts was in accord with the interpretation put on those clauses by the defendants Bramson and Reliance according to their own conduct. As we are satisfied that the trial judge was correct, there is no need to go into the details of this matter. To show that this interpretation was incorrect, defendants rely heavily on the testimony of their witness Lipkin, who also prepared charts showing a result other than that shown by Robinson's charts; but Lipkin testified that a number of the figures included in the charts he prepared were based not on the records in evidence, but on information given him by the defendant Bramson who did not take the witness stand. We conclude that there was nothing in connection with the testimony of Robinson which constitutes reversible error.

■ Yetta Land, Bramson's sister, a lawyer, was asked by government counsel whether she represented "a great many Communists." Objection was made to this question but at once withdrawn. The witness, having answered that she represented "a lot of Communists, like Republicans and a lot of Democrats," was then asked "Are you a Communist?" The witness inquired of the judge whether he desired her to answer this question which she considered improper; the judge replied that it was a matter of indifference to him, but that, if an objection were made, he would sustain it. Objection was made and no answer to the question was given. No motion was made by defendants that the court instruct. the jury to disregard this question. It was, of course, improper; but,

in the context of this lengthy trial and in the light of the mass of evidence against the defendants, we think it was not so prejudicial as to constitute reversible error.

■ Defendants complain that, in response to the court's question, government counsel stated that certain other defendants had pleaded guilty, and that this statement was made after several jurors had been chosen and in the presence of the remaining jurors who were subsequently accepted. We do not think that, in any circumstances, such a statement would constitute reversible error; moreover, it does not clearly appear from the record that the jurors were then present and overheard this statement; the record merely shows that the selection of the jury was begun after this statement was made.

■ Defendants objected to the introduction of testimony by the government relating to transactions in connection with the stock of Wyoga Gas & Oil Company; but defendants themselves, having at first objected to such testimony, subsequently introduced testimony of a witness who sufficiently referred to those transactions to make the government's evidence on the subject admissible. Moreover, the testimony relating to those securities was relevant as showing that Bramson had caused some trust certificates in series G to be cancelled, reissued in the name of his family, and then redeemed, thereby depriving certificate holders of a bona fide chance of having their certificates selected for redemption by lot, and diverting the diminishing income of the trusts to himself or his family.

Defendants contend that the judge made remarks prejudicial to them, that his charge was unfair and that he refused to give certain instructions requested by them; these arguments we regard as so completely without justification as to warrant no discussion.

■ The defendant North contends that the government failed to establish a prima facie case against him and that, in any event, his prosecution was barred by the statute of limitations. We cannot agree. There was testimony that he was one of the salesmen employed by Bramson, and that, sometimes, using the fictitious name of Boyd, he had, by telephone, induced persons to buy listed stocks. Johnston, called as a witness for the government, testified

that a man named Boyd, representing Bunker & Company, had induced him, by telephone, to buy a number of shares of listed securities, and that subsequently the same man named Boyd, whose voice he recognized, had, by telephone, induced him to sell those securities, using the proceeds to purchase Royal Investment Trust certificates, on the representation that they were "a very good investment" and that he would make a "handsome profit" by a sale of these certificates in thirty days. Although Johnston testified that Boyd, some time later, in 1935, had called on him, he was unable at the trial, some seven years later, to identify North as Boyd. We cannot say that that fact made it unreasonable for the jury to believe Johnston's story. Accordingly, there was sufficient evidence to connect North with the conspiracy.

The indictment is dated February 20, 1939, so that the prosecution of North as for conspiracy would have been barred if he had completely severed his connection with the conspiracy on or before February 20, 1936. The witness Reeves, who had been working with North for Bramson, testified that, in January or February, 1936, he met North on the street, and that North then said that "he was winding up or getting through with Bramson." From this evidence, the jury could infer that Boyd had not withdrawn from the conspiracy by February 20, 1936. Hyde v. United States, 225 U.S. 347, 371, 372, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Sperry Gyroscope Co. v. N. L. R. B., 2 Cir., 129 F.2d 922, 927, 928.

Affirmed.