## ELDER v. UNITED STATES.
### No. 14626.

United States Court of Appeals
Fifth Circuit.
June 18, 1954.

Rehearing Denied July 22, 1954.

William H. Maness, Jacksonville, Fla., for appellant.

James L. Guilmartin, U. S. Atty., Miami, Fla., H. S. Phillips, U. S. Atty., Tampa, Fla., Thomas A. Larkin, Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Charged with conspiring,[1] in violation of Section 371, Title 18, with one Austin, to violate the laws of the United States, Title 18, Secs. 2312–2313, prohibiting dealing in interstate commerce in or with motor vehicles, knowing the same to have been stolen, appellant, defendant below, was convicted and committed to the custody of the Attorney General for four years.

Appealing from the sentence and judgment, defendant is here putting forward as grounds for reversal nine specifications of error.[2]

Since most of the objections of defendant go to matters of procedure, a brief preliminary statement as to the proceedings had in the course of the trial is in order.

Austin and Elder were arraigned on November 12, 1952, and both entered pleas of "not guilty". Austin was arraigned in open Court on May 15, 1953, in the presence of the same jury panel from which the trial jury in the conspiracy case was subsequently picked. At that time, Austin pleaded guilty to a charge of interstate transportation of a stolen motor vehicle in a case which was separate from and unrelated to the case at bar. A motion for continuance was filed on behalf of defendant Elder on May 18, 1953. The Court denied the motion.

When the case was called for trial, May 18, 1953, defendant Austin in the absence of the jury panel asked leave to withdraw his plea of "not guilty" and enter a plea of guilty to the conspiracy charge. The leave was granted, Austin pleaded "guilty", and sentence was deferred. The Court then asked defendant Elder if he was ready to go to trial. The defendant's attorney, Mr. Layton, stated that "he was".

1. The indictment charged twenty-five overt acts, alleged to have been committed by one or both of said defendants to effect the object of the conspiracy. The twenty-five overt acts alleged the theft of six automobiles by Austin and subsequent transactions involving both Austin and Elder with the same six automobiles.

2. These are:
   (1) Denying defendant's motion for continuance;
   (2) Excluding from the court room, under the rule, one Buol, Special Agent for the F.B.I.;
   (3) Allowing the defendant Austin to testify that he had pleaded guilty to the conspiracy charge;
   (4) The statement of the court in the course of the trial and in the presence of the jury that the government had made out a prima facie case of conspiracy against the defendant Elder.
   (5) Permitting the agent Buol to take the stand as a witness and exhibiting large charts purporting to collect and present in continuous fashion the facts in evidence concerning the conspiracy, to point out and present to the jury by argument and statements the evidence the government had introduced to prove the same.
   (6) The denial of the defendant's motion for order of acquittal;
   (7) The refusal to give defendant's requested instructions one and two to the jury.
   (8) The denial of defendant's motion for new trial.
   (9) That the defendant was denied his right to a fair and impartial trial as guaranteed by the Constitution.

One juror was excused for cause by the Court, after the juror stated he felt that he might be prejudiced against Elder by reason of having knowledge that Austin had pleaded guilty the preceding Friday to transportation of a stolen motor vehicle interstate.

After the jury was sworn, defendant Elder requested that the Rule be invoked. Government counsel requested that Mr. Buol, Special Agent of the Federal Bureau of Investigation, be excused from the Rule. Defendant objected because Mr. Buol was to be a witness for the Government. The Court then stated that the prosecuting officer was entitled to have one agent sit with him to assist and advise him. The Court then excused Mr. Buol from the Rule to the extent that he could remain in the court room and consult with Government Counsel, but the Court further instructed Mr. Buol that he was not to confer with the witnesses about their testimony or compare witnesses' testimony with each other. Defense counsel's objection was then overruled.

Defense counsel opened his voir dire examination by asking this question: "You all were present in the Court Room on Friday, were you not, when Mr. Austin was arraigned up here and asked whether or not he wanted to withdraw his plea of "not guilty" and enter a plea of guilty? Would that fact in any way prejudice you against the trial of the other defendant in this case?" The jury as a body answered "No, Sir". Defense counsel then asked numerous questions of a similar nature of each individual juror.

Austin was called as a Government witness and was asked to testify as to what disposition had been made of his case as a co-defendant with Elder. Defendant's counsel objected on the ground that it would tend to prejudice the rights of the defendant Elder, in that it would prejudice the minds of the jury. The Court at this point stated: "I think it is proper that he give an answer to the jury in those proceedings, at least to show that the case has been disposed of, as far as he is concerned." The Court then went on to caution the jury as to the manner in which this type of testimony was to be received. The Court then asked Austin what his plea had been, and Austin answered that he had pleaded "guilty" to this charge.

In his closing argument to the jury, Government counsel mentioned the fact that Austin had pleaded "guilty". The Court in charging the jury cautioned them that they were not to consider Austin's plea of "guilty" as an indication of the guilt of the defendant Elder.

During the presentation of the Government's testimony, the Court indicated that it was overruling an objection by defense, because the Court felt that a prima facie case had been established at that point in the trial sufficiently to allow certain evidence to come in. The Court, again in overruling a motion by defense, stated that it felt a prima facie case had been established. Government counsel, during argument to an objection by defense, stated that there was prima facie evidence of a conspiracy.

The last witness for the Government's case in chief, indeed the Government's chief witness, having been called to the witness chair five times, his testimony covering approximately 75 pages of the record, was Federal Bureau of Investigation Agent Fred Buol, who was recalled to testify. He testified from six charts introduced in evidence, over objection of the defendant. The Court made an explanation to the jury regarding admission of these charts. The jury was later allowed to take these charts to the Jury Room, along with other exhibits.

At the close of Government's case in chief, defendant made a motion for an order of acquittal, which was denied by the Court. The motion was renewed at the close of all evidence and again denied by the Court.

Defendant requested four charges, all of which were refused by the Court. The

jury returned a verdict of "guilty", on May 25, 1953.

Defendant's motion for a new trial on May 27, 1953, was denied in open court on June 5, 1953.

Stripped of technical language, the essential element in issue in this case was the existence of an agreement to knowingly move stolen cars from one state to another. That Elder did participate in moving stolen cars from Florida to Georgia and South Carolina is conceded; that in so doing he sometimes had with him, or on other occasions met Austin, who did in fact know that the cars so moved were stolen, is also conceded. Austin positively and circumstantially testified not only to an agreement admitting to a conspiracy but to Elder's active participation and to some extent leadership in it, and there was other testimony amply supporting the jury's verdict that Elder was a party to the conspiracy. Elder, however, stoutly denied his guilt and throughout the trial insisted, and here insists, that the legal and admissible evidence fails to prove "unless circumstantially" the existence of an agreement or conspiracy or knowledge on the part of Elder of the stolen character of the cars, indeed any guilty knowledge. Elder's claim below was, and here is: that his actions have all been consistent with innocence; that the facts and circumstances point more forcibly than to any other to the theory that Austin, a hardened and experienced criminal, selected Elder, a young man of unblemished reputation and no past criminal record, as the scape goat for his sins, when his criminal activities were discovered and the law closed in upon him; and that his accusations against, and incrimination of, Elder are and should have been treated by the jury as unworthy of belief.

Insisting that an analysis of the twenty-five overt acts revealed: that the only acts which constitute crime are acts charged to Austin, his co-defendant, and that none of them purport to prove or prove the existence of an agreement or a conspiracy or knowledge on the part of defendant that any of the cars with which he dealt were stolen motor vehicles; and that the whole case against defendant is made upon the premise that in acting as he did, he was in a secret conspiracy with Austin; the appellant argues that the verdict of guilty in this case was induced by prejudicial errors which led the jury off on a theory that proof of the overt acts was sufficient proof of the conspiracy charged.

■ Because of the facts established by the evidence, that appellant has been neither convicted of nor charged with a prior offense, that until these matters came up he was a person of good reputation, and because of his youth and the severity of the sentence imposed, we have examined the record with the greatest care and carefully weighed each of the specifications in the light of that record and of the applicable principles of law. As a result we have reached the firm conclusion that the evidence for the Government, if believed, certainly supports the jury's verdict, and that, for the reasons hereinafter briefly stated, except as to No. 5, there was no error in respect of any of the matters specified.

■ As to that specification, we are of the clear opinion that it was error to permit Buol, over defendant's objection, to present to the jury, and testify as to, the charts of which appellant complains. In the light, however, of the record as a whole, including the instructions given by the judge at the time, the fact that the charts did not contain any misstatement of fact, the fairness and fullness of the charge of the court, to which no exception was taken, and the general nature of the evidence as a whole, we are of the equally clear opinion that the error was harmless, that the defendant took no prejudice from it, and that the judgment should not be reversed because of it.[3]

3. Federal Rules of Criminal Procedure, Rule 52(a), 18 U.S.C.A.; Title 28 U.S.C.A. § 2111.

The error claimed in this specification consists not only in the admission as exhibits, to be taken by the jury in their retirement, of six charts, each dealing with a separate car, prepared by or under the directions of the witness Buol so as to put in composite form and thereby greatly augment the incriminating force of isolated circumstances, but in the presence of Buol as a witness on the stand to testify to the contents of the charts, thus giving them the effect of live evidence presented on the sworn testimony of a witness who, as a member of the Federal Bureau of Investigation, had sat with the District Attorney in the court room throughout the trial and who had already testified at length as a witness to various matters, including conversations and dealings that he had had with the defendant.

Thus, argues appellant, by adopting this unusual expedient of imparting to the scattered testimony of various witnesses an aspect of simplicity, continuity, brevity and force, which but for this manner of presentation the evidence would not have had, the United States was enabled to obtain the benefit not only of a repetition in greatly damaging form of matters already testified to but to add to this damage the strength and force of Buol's personal testimony that he had compared these charts with the transcript of the testimony in the trial and that the charts were correct. Thus through some 20 pages of testimony the items stated on these charts were emphasized and re-emphasized over and over again.[4]

We cannot, of course, go along with the appellant's basic theory repeated many times in his brief, that, because of the standing and reputation of agents of the Federal Bureau of Investigation for successfully prosecuting the guilty and never prosecuting the innocent, this infallibility gives them such preponderant weight with the jury as to in effect deprive a defendant of a fair trial if the government uses them as witnesses or otherwise in aid of the prosecution of

---

4. In his brief, appellant states his contention against the ruling thus:

"It should readily be conceded that if the government is entitled to assemble in a case involving only testimonial evidence, as distinguished from descriptions of localities, objects and things, excerpts of testimony, that the defense also would be entitled to assemble from isolated bits of evidence, charts and graphs showing its contention as to what the truth was so that the evidence could be summarized and presented more effectively than as it came in piecemeal. Carried to its logical conclusion, such a procedure would ultimately end by each side submitting to the court to be admitted in evidence its version or theory in writing of what the evidence has proved. Carried one step further, each side might logically demand that a transcript of all the testimony should be edited and submitted to the jury through the testimony of a witness. The courts have dealt with cases of a complex nature for many years, too often the so-called complexities in criminal cases are no more than problems of the paucity of proof in a (weak) and circumstantial case than in the facts themselves.

"A close scrutiny of the record does not support the conclusion that the facts in this case are complex. Indeed most of the facts are not in dispute. The controversy arises over the inference to be drawn from the facts and certainly it is an undue advantage to the prosecution to be able to so arrange and compile and phrase such undisputed facts that the inference that the jury will draw will be that of guilt rather than innocence. That is the error in the admission of these charts. More damaging to the defendant than their bare admission is the manner in which they were used after being admitted.

"It is Mr. Buol, a special agent of the F.B.I. who supervised the preparation of these charts, produced them in court, and after they were admitted, testified as to his interpretation of the government's evidence as presented. If there is any sound reason why the charts should have been admitted, it is here argued to permit an F.B.I. agent intimately associated with the prosecution of the case, obviously interested in a conviction, to testify as an expert summarizer and have him summarize the testimony of the government's witnesses and highlight the effect of this summary, is reversible error."

claimed offenses which they have investigated. Indeed, we think this contention is wholly without factual or legal basis.

We are of the clear opinion, though, considering the theory of the prosecution and of the defense in this case,—of the prosecution that the appellant was a willing principal or at least a tool of Austin, and of the defendant that, while he did not dispute the bare fact of his connection with the cars involved or that they were stolen cars, he did emphatically deny that he knew that they were stolen or that Austin was acting criminally, that there was error in the complained of proceeding.

It is one thing to have various isolated bits of evidence testified to, witness by witness, and as parts of a whole record containing evidence favorable and unfavorable to both sides. It is quite another to permit the agent, who has participated in the trial by sitting in and advising with the district attorney and by testifying as a witness in the case, to retake the stand armed with charts which he had caused to be prepared and which, in compact and chronological form, present isolated pieces of evidence in such brief and graphic form as to purport to forge the links in the chain of evidence so closely and so convincingly as to completely destroy defendant's

claim that he was the innocent tool of a professional and accomplished criminal.

Appellant concedes that there is authority for the use of maps, plats and other drawings to illustrate testimony.[5]

The United States, in its original brief and in a supplemental memorandum of law, cites many cases [6] where, in connection with their own evidence, witnesses have made charts or maps or graphs to illustrate the facts they testify to, or where accountants have made summaries from books or accounts, and in one instance where a United States District Attorney was permitted to testify in explanation of a chart prepared to illustrate graphically the way the conspiracy charged—in that case the illegal withdrawal of whiskey—was carried on, but no case has been cited to us having facts precisely in point with this one, nor have we found any.

Nevertheless, we are convinced that it was not such prejudicial error as to be reversible. This is so for the reasons stated in the beginning of this discussion, and particularly because from the instructions of the court to the jury,[7] and from the basic inquiry to Mr. Buol with reference to each of the charts:

"Will you go down that card item by item and tell us what each

**5.** 26 Am.Jur., 616, "Evidence", Sec. 739; Sanders v. Walden, 214 Ark. 523, 217 S. W.2d 357, 9 A.L.R.2d 1044.

**6.** United States v. Park Ave. Pharmacy, Inc., 2 Cir., 56 F.2d 753; Somberg v. United States, 7 Cir., 71 F.2d 637; United States v. Weimbren, 2 Cir., 121 F.2d 826; United States v. Schenck, 2 Cir., 126 F.2d 702; United States v. Bramson, 2 Cir., 139 F.2d 598; Noell v. United States, 9 Cir., 183 F.2d 334; Hisler v. State, 52 Fla. 30, 42 So. 692; Washington v. State, 86 Fla. 533, 98 So. 605; 9 A.L.R.2d 1044; Sec. 2, 7, 15 and 36.

**7.** "Now I want to caution you in one or two respects about these charts. They are prepared in view—or, rather they are received in this case because of the complex nature of the evidence. There are isolated bits of evidence with respect to different cars and different serial

numbers and things of that sort, and it appears to me the Government should be permitted to assemble it for you and indicate what the proof was with respect to the several cars.

"I want you to bear in mind that these charts are not, themselves, independent evidence. They are simply the Government's conception, its contention as to what the evidence already in, has established. If they differ in any particular with your recollection as to the evidence, you will disregard them in that respect. If they omit some of the Government's evidence, as they necessarily must, since they are simply a summary, you must not disregard that other evidence. They are simply and solely for illustrative purposes so that the evidence will be summarized or attempted to be summarized for your consideration, and I ask that you consider them in that light and not as independent evidence in and of themselves."

of those items are from your interpretation of the government's evidence as presented?"

it plaintly appears that the charts were not offered as independent evidence and that Buol did not purport to testify in respect of them as a witness.

What has already been said in the course of this opinion has, we think, made it clear, without the necessity of saying more, as to all of the specifications except Nos. 4 and 7, that there is no merit in them.

As to Specification No. 4, complaining of the statement of the court in the presence of the jury, that the government had made out a prima facie case of conspiracy, it is sufficient to say of it: (1) that at the time it was made, no objection was made to its making; (2) that in the context in which it was made it was intended to, and did, have the effect merely of a statement by the court that sufficient evidence had been offered to make admissible the testimony then being offered; and (3) in his general charge to the jury, to which no objection was made, the court instructed the jury:

> "Now, I might say further, that you are not to understand or infer from anything said by me to counsel during the trial of the case in ruling on evidence in passing on matters of law that arose—you are not to understand any of those things as being an expression of opinion on my part as to the guilt or innocence of the defendant. If you have got any such notion as that, disabuse your minds of that impression, please."

As to Specification No. 7, which complains of the refusal to give in charge to the jury defendant's requested instructions 1 and 2, it is sufficient to say that, to the extent that they were correct, the court in his general charge to the jury adequately covered the points raised in each of them.

There being no reversible error, the judgment is affirmed.